```
               IN THE UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF TENNESSEE
                         WESTERN DIVISION
```

|  |  |
|---|---|
| DOROTHY K. GRAVES FAMILY TRUST,<br><br>    Plaintiff,<br><br>v.<br><br>LITTON LOAN SERVICING LP,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)   No. 10-2173<br>)<br>)<br>)<br>) |

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR REMAND**

Before the Court is Plaintiff Dorothy K. Graves Family Trust's ("Plaintiff Trust") Motion for Remand filed on April 12, 2010. (Mot. for Remand, ECF No. 8.) Defendant Litton Loan Servicing LP ("Defendant") responded in opposition on May 7, 2010. (Def.'s Resp. in Opp'n to Pl.'s Mot. for Remand, ECF No. 14.) ("Def.'s Resp.") Also before the Court is Defendant's Motion to Dismiss filed on April 21, 2010. (Def.'s Mot. to Dismiss, ECF No. 9.) Plaintiff Trust responded in opposition on May 7, 2010. (Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss, ECF No. 15.) ("Pl.'s Mem.") For the following reasons, Defendant's Motion to Dismiss is GRANTED and Plaintiff Trust's Motion for Remand is DENIED.

## I. Factual Background[1]

This dispute stems from disagreement about ownership of real property located at 159 North White Station Road, Memphis, Tennessee (the "Property"). Dennis Dean Graves ("Graves") is the acting trustee of Plaintiff Trust and participated in the real estate transactions in dispute. (See Compl. and Pet. for Injunctive Relief ¶ 2, ECF No. 1-1 ("Compl."); Def.'s Mem. 3.)

On October 19, 2001, William and Gayelynn Oyler (collectively, the "Oylers") entered into a recorded land contract through which they passed possession to the Property to Dean Graves & Associates, LLC, but not fee simple title. (See Ex. B, at 2-8, ECF No. 9-3.) The contract provided for the future transfer of fee simple title to the Property to Dean Graves & Associates, LLC on satisfaction of certain closing conditions, including the payment of the purchase price. (See id.)

---

[1] The facts discussed in this Part derive from Plaintiff's Complaint and documents filed with the Shelby County, Tennessee Register's Office. Those documents are matters of public record. The Court hereby takes judicial notice of those documents for the purpose of deciding Defendant's Motion to Dismiss. See Jones v. City of Cincinnati, 521 F.3d 555, 562 (6th Cir. 2008) ("A court may consider public records without converting a Rule 12(b)(6) motion into a Rule 56 motion.") (citation omitted); Amini v. Oberlin Coll., 259 F.3d 493, 502 (6th Cir. 2001) ("In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record . . . may be taken into account." (quoting Nieman v. NLO, Inc., 108 F.3d 1546, 1554 (6th Cir. 1997)); see also Commercial Money Ctr., Inc. v. Ill. Union Ins. Co., 508 F.3d 327, 336 (6th Cir. 2007) (citations omitted); Lynch v. Leis, 382 F.3d 642, 648 n.5 (6th Cir. 2004). Plaintiff has stipulated to the statement of facts in Defendant's Memorandum of Law in Support of Motion to Dismiss, which discusses and references the relevant documents. (See Pl.'s Mem. 1; Def.'s Mem. of Law in Supp. of Mot. to Dismiss 2-5, ECF No. 9-1 ("Def.'s Mem.").)

On April 30, 2004, the Oylers transferred the Property by warranty deed to Graves personally instead of Dean Graves & Associates, LLC. (See Ex. C, at 2-3, ECF No. 9-4.) Graves financed his purchase with a $160,105.78 loan from Bank of Bartlett and granted Bank of Bartlett a deed of trust lien on the Property pursuant to an instrument dated April 30, 2004. (See Ex. D, at 2-9, ECF No. 9-5.) The Oylers' transfer of the Property to Graves and the Bank of Bartlett's lien were not recorded until May 11, 2004. (See id. at 2; Ex. C at 2.)

The Bank of Bartlett's loan was made to Graves individually and premised on Graves' present and continued ownership of the Property. (See Ex. D, at 3-9.) The deed of trust gave Bank of Bartlett the right to take possession of the Property if Graves defaulted on the loan. (See id.) Nevertheless, Graves purportedly executed a quit claim deed on May 5, 2004 in which he attempted to transfer the Property to Plaintiff Trust in return for $10 and the love and consideration of his family. (See Ex. E, at 2-4, ECF No. 9-6.) That quit claim deed was recorded on May 7, 2004, four days before the warranty deed transferring the Property from the Oylers to Graves and the Bank of Bartlett's deed of trust lien were recorded. (See id. at 2.) The notary acknowledgement on the quit claim deed omits Graves' name as the signatory who executed the deed. (See id. at 3.) It states:

3

> Before me, a Notary Public in and for said State and County, duly commissioned and qualified, personally appeared to me known (or proved to me on the basis of satisfactory evidence) to be the person described in and who executed the foregoing instrument, and acknowledged that he executed the same as his free act and deed.
>
> WITNESS my hand and Notarial Seal at office this 5th day of May, 2004.

(Id.) That language is followed by the notary's signature, seal, and the expiration date of his commission. (Id.)

On June 30, 2005, Graves refinanced the Bank of Bartlett loan with a loan from Wilmington Finance. (See Ex. F, at 3-18, ECF No. 9-7.) To secure the loan, Graves executed a deed of trust on the Property in favor of Wilmington Finance. (See id.) That deed of trust was recorded on July 14, 2005. (See id. at 2.) In that deed of trust, Graves covenanted that he was lawfully seised of the estate conveyed, that he had the right to grant and convey the Property, and that the Property was unencumbered, except for encumbrances of record. (See id. at 6.) Graves also agreed with Wilmington Finance that he would be in default if, during the loan application process, he gave materially false, misleading, or inaccurate information to Wilmington Finance or failed to provide Wilmington Finance with material information in connection with the loan. (See id. at 9.) Defendant, as servicer of the loan, initiated foreclosure proceedings against the Property. (See Compl.)

4

On February 12, 2010, Plaintiff Trust filed a Complaint and Petition for Injunctive Relief ("Complaint") in the Chancery Court of Tennessee for the Thirtieth Judicial District at Memphis, Tennessee. (Id.) The Complaint alleges that "Defendant is currently attempting to foreclose on the Deed of Trust and take the Plaintiff's [real] property, even though Plaintiff has never obligated itself to [D]efendant in any manner" and requests that Defendant be enjoined "from taking any action to deprive Plaintiff of its rights in the subject property." (Id. at 3-4.)

Defendant removed the case to this Court on March 12, 2010. (Notice of Removal, ECF No. 1.) The alleged basis for removal is that this Court has diversity jurisdiction because Plaintiff Trust and Defendant are citizens of different states and the amount-in-controversy requirement is met. (See id. ¶ 2-10.)

On April 21, 2010, Defendant filed the Motion to Dismiss currently before the Court alleging that the quit claim deed purporting to convey the Property from Graves to Plaintiff Trust is invalid and Plaintiff Trust has no basis to assert a claim against Defendant. (See Def.'s Mot. to Dismiss 1; Def.'s Mem. 11.) Plaintiff Trust disputes those arguments, arguing that the quit claim deed lawfully transferred ownership of the Property to Plaintiff Trust and Defendant has no basis to foreclose on the Property. (See Pl.'s Mem. 1-3.)

5

## II. Jurisdiction and Choice of Law

Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district . . . where such action is pending."  28 U.S.C. § 1441(a).  Federal district courts have original jurisdiction of all civil actions between citizens of different states where the amount-in-controversy exceeds $75,000, exclusive of interest and costs.  28 U.S.C. § 1332(a)(1).  "A defendant seeking to remove a case to federal court has the burden of proving that the district court possesses jurisdiction."  Williamson v. Aetna Life Ins. Co., 481 F.3d 369, 375 (6th Cir. 2007) (citation omitted).

Here, Plaintiff Trust argues that this Court should remand this case to state court because it does not present a federal question and Defendant has failed to show that the parties are diverse because it has not demonstrated a citizenship other than Tennessee.  (See Mem. in Supp. of Mot. for Remand 2-3, ECF No. 8-1.)  In its response, Defendant argues that the parties are completely diverse and offers a declaration in support.  (See Def.'s Resp. 1-4; Ex. A, at 2-3, ECF No. 14-1.)

Plaintiff Trust is an irrevocable family trust formed and existing pursuant to Tennessee law.  (Compl. ¶ 1.)  Graves,

6

Plaintiff Trust's trustee, is a Tennessee resident, and Plaintiff Trust concedes that it is a Tennessee citizen. (See id. ¶ 2; Mem. in Supp. of Mot. for Remand 1-3.) "[F]or diversity purposes a trust is a citizen of whatever state the trustee is a citizen of." May Dep't Stores Co. v. Fed. Ins. Co., 305 F.3d 597, 599 (7th Cir. 2002) (citations omitted); accord Homfeld II, L.L.C. v. Comair Holdings, Inc., 53 F. App'x 731, 732 (6th Cir. 2002) (citations omitted); Gen. Ret. Sys. of City of Detroit v. UBS AG, No. 10-CV-13920, 2010 WL 5296957, at *4 (E.D. Mich. Dec. 20, 2010). Therefore, Plaintiff Trust is a Tennessee citizen for the purpose of diversity jurisdiction.

Defendant is a limited partnership. (Compl. ¶ 3.) "For purposes of determining diversity jurisdiction, a limited partnership is deemed to be a citizen of every state where its general and limited partners reside." Hooper v. Wolfe, 396 F.3d 744, 748 (6th Cir. 2005) (citations omitted). According to a declaration by Ann Kelley, a Senior Vice President of Defendant, the sole general partner of Defendant is Litton Consumer and Corporate Servicing, LLC, a Utah limited liability company with its principal place of business in Utah, and the sole limited partner of Defendant is Litton Mortgage Servicing, LLC, which is also a Utah limited liability company with its principal place of business in Utah. (See Def.'s Resp. 3; Decl. of Ann Kelley ¶ 1-3, ECF No. 14-1.)

A limited liability company has the citizenship of each of its members. <u>Delay v. Rosenthal Collins Grp., LLC</u>, 585 F.3d 1003, 1005 (6th Cir. 2009) (citations omitted). The sole member of both Litton Consumer and Corporate Servicing, LLC and Litton Mortgage Servicing, LLC is Goldman Sachs Bank, USA, a New York state chartered bank with its principal place of business in New York. (<u>See</u> Def.'s Resp. 3; Decl. of Ann Kelley ¶ 4-5.) Goldman Sachs Bank, USA is wholly owned by the Goldman Sachs Group, Inc., a Delaware corporation with its principal place of business in New York. (<u>See</u> Def.'s Resp. 3; Decl. of Ann Kelley ¶ 5.) Therefore, Defendant is not a Tennessee citizen. <u>See Delay</u>, 585 F.3d at 1005; <u>Hooper</u>, 396 F.3d at 748. The parties are completely diverse. <u>See</u> <u>V&M Star, LP v. Centimark Corp.</u>, 596 F.3d 354, 355 (6th Cir. 2010) (citation omitted).

A defendant seeking to remove a case from state court bears the burden of demonstrating that it is "more likely than not" that the amount-in-controversy requirement is satisfied. <u>See Cleveland Hous. Renewal Project v. Deutsche Bank Trust Co.</u>, 621 F.3d 554, 560 (6th Cir. 2010) (citation omitted). "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." <u>Hunt v. Wash. State Apple Adver. Comm'n</u>, 432 U.S. 333, 347 (1977) (citations omitted). When a plaintiff seeks an injunction, the "value of the object in the

8

litigation" is the ascertainable monetary value of injunctive relief. See White v. Loomis Armored US, Inc., 729 F. Supp. 2d 897, 902 (E.D. Mich. 2010) (citation omitted); Crocker Park, LLC v. Lucky Brand Dungarees Store, Inc., No. 1:08-CV-2127, 2008 WL 4746086, at *2 (N.D. Ohio Oct. 24, 2008) (citations omitted). The Sixth Circuit Court of Appeals has not yet resolved whether courts should evaluate that value from the perspective of the plaintiff or the defendant. See Northup Props., Inc. v. Chesapeake Appalachia, L.L.C., 567 F.3d 767, 770 n.1 (6th Cir. 2009).

Here, the ascertainable monetary value of injunctive relief sought by Plaintiff Trust exceeds $75,000 from the perspective of both Plaintiff Trust and Defendant. In 2009, the Property on which Plaintiff Trust seeks to enjoin foreclosure proceedings had an appraised value of $247,300. (See Ex. A, at 2, ECF No. 1-2.) The Deed of Trust issued by Graves to Wilmington Finance stated that Graves owed Wilmington Finance $174,000. (See Deed of Trust 53, ECF No. 1-1.) Graves has defaulted on his loan from Wilmington Finance. (See Def.'s Mem. 5.) Therefore, the amount-in-controversy requirement is satisfied. See Northup Props., 567 F.3d at 769-71; Lorimer ex rel. Estate of Lorimer v. Berrelez, 331 F. Supp. 2d 585, 587-91 (E.D. Mich. 2004).

Under the Anti-Injunction Act, 28 U.S.C. § 2283, "[a] court of the United States may not grant an injunction to stay

9

proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. The "prohibition extends to indirect injunctions against parties." Lorillard Tobacco Co. v. Chester, Willcox & Saxbe, 589 F.3d 835, 844 (6th Cir. 2009) (quoting Tropf v. Fid. Nat'l Title Ins. Co., 289 F.3d 929, 941 (6th Cir. 2002)). However, the Act does not preclude injunctions against the institution of state court proceedings. Tropf, 289 F.3d at 941 (citation omitted).

Here, the Anti-Injunction Act does not apply because the Complaint is unclear about whether there currently are state court proceedings and whether Plaintiff Trust is seeking to enjoin those proceedings or future proceedings. (See Compl. 3-4.) Even if it did apply, which neither party argues, it would not divest this Court of jurisdiction. See Ark. Blue Cross & Blue Shield v. Little Rock Cardiology Clinic, P.A., 551 F.3d 812, 818 (8th Cir. 2009) (citations omitted); Prometheus Dev. Co. v. Everest Props., 289 F. App'x 211, 213 n.1 (9th Cir. 2008) (citations omitted).

Because the diversity and amount-in-controversy requirements are satisfied, this Court has diversity jurisdiction. See 28 U.S.C. § 1332(a)(1). Removal of the lawsuit from state court was proper. See 28 U.S.C. § 1441(a);

10

Williamson, 481 F.3d at 375. Therefore, Plaintiff Trust's Motion for Remand is DENIED.

In a diversity action, state substantive law governs. See Brocklehurst v. PPG Indus., Inc., 123 F.3d 890, 894 (6th Cir. 1997) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)). A federal district court is required to apply the choice-of-law rules of the state in which it sits. See Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941); Montgomery v. Wyeth, 580 F.3d 455, 459 (6th Cir. 2009) (citation omitted).

Here, Plaintiff Trust and Defendant dispute ownership of Tennessee real property and agree that Tennessee law governs. (See Pl.'s Mem. 2-3; Def.'s Mem. 6-11.) The deed of trust issued by Graves to Wilmington Finance contains a choice of law provision stating that it "shall be governed by federal law and the law of the jurisdiction in which the Property is located." (Deed of Trust 21, ECF No. 1-1.) Therefore, Tennessee substantive law governs. See In re Korean Air Lines Disaster of Sept. 1, 1983, 932 F.2d 1475, 1495 (D.C. Cir. 1991); Coleman Logistics, Inc. v. Breed Safety Restraint Sys., Inc., No. 3:03-cv-677, 2007 WL 173842, at *6 (E.D. Tenn. Jan. 19, 2007); Saintsbury Holdings, LLC v. RMC, LLC, No. 1:06-CV-00014, 2006 WL 1900317, at *4 (M.D. Tenn. July 11, 2006); Vantage Tech., LLC v. Cross, 17 S.W.3d 637, 650 (Tenn. Ct. App. 1999); First Christian

11

Church of Guthrie, Ky. v. Moneypenny, 439 S.W.2d 620, 625 (Tenn. Ct. App. 1968).

### III. Standard of Review

In addressing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pled factual allegations as true. League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007). A plaintiff can support a claim "by showing any set of facts consistent with the allegations in the complaint." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 (2007). This standard requires more than bare assertions of legal conclusions. Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 361 (6th Cir. 2001) (citation omitted). "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Any claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Twombly, 550 U.S. at 555). Nonetheless, a complaint must contain sufficient facts "to 'state a claim to relief that is plausible on its face'" to

12

survive a motion to dismiss. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citation omitted). A plaintiff with no facts and "armed with nothing more than conclusions" cannot "unlock the doors of discovery." Id. at 1950.

**IV. Analysis**

Under Tennessee law, deeds to real property are effective against third parties not having actual notice of them "only from the noting thereof for registration on the books of the register." Tenn. Code Ann. § 66-26-101; see Tenn. Code Ann. §§ 66-24-101(a)(1), (4), (8). Registration on the books of the register requires a proper notary acknowledgment. See id. § 66-22-101; In re Marsh, 12 S.W.3d 449, 454 (Tenn. 2000); Am. City Bank of Tullahoma v. W. Auto Supply Co., 631 S.W.2d 410, 423-24 (Tenn. Ct. App. 1981).

"To facilitate real-estate transactions, the Tennessee legislature has provided statutory forms that fulfill the acknowledgment requirement, and all of the forms require the notary to include the names of the individuals acknowledging

13

their signatures." In re Biggs, 377 F.3d 515, 518 (6th Cir. 2004) (citations omitted); see also Fid. Nat'l Title Ins. Co. v. Archer Land Title, LLC, No. 3:07-cv-0213, 2007 WL 3231847, at *7 (M.D. Tenn. Oct. 30, 2007) ("Where the notary acknowledgment of a deed of trust omits the names of the deed's signers, the deed is void."). Including the names of acknowledging individuals "[i]s not a purposeless formality. The procedure serves to verify the identity of the individual signing the instrument and to establish a fraud-free system for recording the ownership of real property—a necessary prerequisite to any free market." In re Biggs, 377 F.3d at 519. If a notary fails to name the individuals who signed a deed, subsequent purchasers may be unable to verify that the instrument was signed by the true property owners, creating uncertainty about the legal effectiveness of the instrument. See id.

The Sixth Circuit Court of Appeals concluded in In re Biggs that a deed of trust in which the acknowledgment omitted the names of the individuals purporting to acknowledge their signatures on the deed was invalid against subsequent purchasers of the property under Tennessee law. See id. at 516. It rejected the argument that a deed omitting the names of acknowledging individuals substantially complied with Tennessee law or clearly evidenced intent to authenticate or acknowledge the document. See id. at 518-21. It also rejected the argument

14

that names in the deed of trust could satisfy the names-in-the-acknowledgement requirement and concluded that, if that argument were correct, the names-in-the-acknowledgement requirement would be eliminated.  See id. at 520.  Ultimately, it concluded that "[f]ar from being a finicky exaltation of form over substance, the requirement that the grantors' names appear on the acknowledgment is essential to giving the acknowledgment statute the modest substance that the Tennessee legislature thought it deserved." Id.

Here, the notary acknowledgment on the quit claim deed in which Graves purported to transfer the Property to Plaintiff Trust omitted Graves' name as the signatory who executed the deed. (See Ex. E, at 3.)  The acknowledgment states:

> Before me, a Notary Public in and for said State and County, duly commissioned and qualified, personally appeared to me known (or proved to me on the basis of satisfactory evidence) to be the person described in and who executed the foregoing instrument, and acknowledged that he executed the same as his free act and deed.
>
> WITNESS my hand and Notarial Seal at office this 5th day of May, 2004.

(Id.)  It is substantively identical with the acknowledgement found to be deficient in In re Biggs, which stated:

> On this 6 day of November 1997, before me personally appeared
>
> [blank]

15

> to me known to be the person(s) described in and who executed the foregoing instrument, and who acknowledged the execution of the same to be [blank] free act and deed. Witness my hand and official seal.

See In re Biggs, 377 F.3d at 516-17.  Both omit the name of the person who personally appeared before the notary.  Therefore, the same conclusion is appropriate.  The notary acknowledgment on the quit claim deed does not comply with Tennessee law.

Plaintiff Trust and Defendant dispute the consequences of a deed's failure to contain a proper notary acknowledgement. (Compare Def.'s Mem. 6-10 (arguing that, because the notary acknowledgment does not comply with Tennessee law, the quit claim deed is invalid), with Pl.'s Mem. 2-3 (arguing that the quit claim deed transferred ownership of the Property to Plaintiff Trust).)

Until June 6, 2005, Tennessee Code Annotated § 66-26-103 stated that "[a]ny instruments not so proved, or <u>acknowledged and registered</u>, or noted for registration, shall be null and void as to existing or subsequent creditors of, or bona fide purchasers from, the makers without notice."  Tenn. Code Ann. § 66-26-103 (emphasis added).  On June 6, 2005, the Tennessee legislature amended that statutory provision by deleting the reference to acknowledgment.  It now reads, "[a]ny instruments not so registered, or noted for registration, shall be null and

16

void as to existing or subsequent creditors of, or bona fide purchasers from, the makers without notice." Id.

Tennessee Code Annotated § 66-24-101(e) states:

Unless an instrument is acknowledged or proved, as provided in chapter 22 of this title, or other applicable law:

. . .

(2) If the instrument conveys any interest in real property, including any lien on the property, no purchaser shall be required to accept delivery of the instrument. If, however, an instrument not so acknowledged or proved is otherwise validly registered, the instrument shall be deemed to be validly registered for the purposes of §§ 66-26-102 and 66-26-103, and in full compliance with all statutory requirements set forth in § 66-22-101, and all interested parties shall be on constructive notice of the contents of the instrument.

Id. § 66-24-101(e)(2). Nevertheless, Tennessee Code Annotated § 66-24-101(f) limits the application of § 66-24-101(e). Section 66-24-101(f) states, "Subsection (e) shall apply to all instruments of record on or after June 6, 2005. <u>However, if the relative priorities of conflicting claims to real property were established at a time prior to June 6, 2005, the law applicable to such claims at such time shall determine their priority</u>." Id. § 66-24-101(f) (emphasis added).

Here, the relative priorities of conflicting claims to the Property were established before June 6, 2005. On October 19, 2001, the Oylers entered into a recorded land contract through which the Oylers passed possession to the Property to Dean

17

Graves & Associates, LLC, but not fee simple title. (See Ex. B, at 2-8.) The contract provided for the future transfer of fee simple title to the Property to Dean Graves & Associates, LLC on satisfaction of certain closing conditions, including the payment of the purchase price. (Id.) On April 30, 2004, the Oylers transferred the Property by warranty deed to Graves personally instead of Dean Graves & Associates, LLC. (See Ex. C, at 2-3.) On May 5, 2004, Graves attempted to execute a quit claim deed to convey the Property to Plaintiff Trust, which was recorded on May 7, 2004. (See Ex. E, at 2-4.) On May 11, 2004, the Oylers' transfer of the Property to Graves and the Bank of Bartlett's mortgage on the Property were recorded. (See Ex. C, at 2; Ex. D, at 2.)

At the time of those transactions, the quit claim deed was null and void against Graves' creditors under Tennessee law. See Tenn. Code Ann. § 66-26-103; In re Biggs, 377 F.3d at 516, 520. All of the relevant conveyances were recorded before June 6, 2005. Because the priorities of the conflicting claims were established before June 6, 2005, Tennessee Code Annotated § 66-24-101(f) requires this Court to apply Tennessee law as it existed before June 6, 2005. See Tenn. Code Ann. § 66-24-101(f). Contrary to Plaintiff Trust's argument, In re Hickman, 367 B.R. 620 (Bankr. E.D. Tenn. 2007) does not demand the opposite result because, unlike that case, the priorities here

18

were established before June 6, 2005.  See In re Hickman, 367 B.R. at 625.  Therefore, Plaintiff Trust has no deed enforceable against Defendant and no basis to stop foreclosure proceedings on the Property.  See In re Airport-81 Nursing Care, Inc., 29 B.R. 501, 507 (Bankr. E.D. Tenn. 1983); In re Marsh, 12 S.W.3d at 454;; REM Enters., Ltd. v. Frye, 937 S.W.2d 920, 922 (Tenn. Ct. App. 1996).

Plaintiff Trust alleges that Defendant knew or should have known that Wilmington Finance's mortgage interest on its loan to Graves was defective, implying that Defendant knew or should have known of a valid conveyance of the Property from Graves to Plaintiff Trust when Wilmington Finance loaned money to Graves.  (See Compl. ¶ 11.)  However, Plaintiff Trust has not identified any facts plausibly suggesting that Defendant or Wilmington Finance had notice of any valid conveyance to Plaintiff or that there was such a conveyance.  Indeed, Graves represented to Wilmington Finance that he was lawfully seised of the Property and had the right to convey it.  Therefore, Plaintiff Trust has not stated a plausible claim that its interest in the Property has priority over the interest Defendant represents.  Because Plaintiff Trust has not stated a plausible claim to relief, Defendant's Motion to Dismiss must be granted.  See Iqbal, 129 S. Ct. at 1949.

**V.   Conclusion**

For the foregoing reasons, the Court GRANTS Defendant's Motion to Dismiss and DENIES Plaintiff Trust's Motion for Remand.

So ordered this 3rd day of March, 2011.

s/ Samuel H. Mays, Jr.<br>
SAMUEL H. MAYS, JR.<br>
UNITED STATES DISTRICT JUDGE